### In re SNEDAKER.

(Supreme Court of Utah Territory.)

HAWLEY, J. The question before the court is a motion made on the part of Henry J. Faust, assignee in bankruptcy of the estate of

the said J. M. Snedaker, based upon the opinion of the said assignee, setting forth, among other things, that F. D. Clift, one of the creditors of said bankrupt, held a mortgage lien upon certain real estate mentioned in said petition,' belonging to the said estate, as security for the payment of a certain debt of the said bankrupt, in the sum of six thousand dollars, and that the said Clift, without regard to the said bankrupt proceedings, had commenced independent proceedings in the Third judicial court to foreclose his said mortgage, and that such proceedings were now pending and undetermined therein, and thereby prayed that an injunction might issue to restrain said proceedings, etc.

In examining this case, it must be borne in mind that the primary and chief design of the bankrupt act is to distribute the bankrupt's estate among his creditors, under the provisions of the act. Mortgage and other liens that have been obtained fairly and in good faith are recognized and protected by the act when the mortgagee or lawful holder thereof conforms to its provisions for the purpose of establishing and realizing upon such security. But, to do this, the secured creditor, in availing himself of such special priority over other creditors, and especially after insolvency and bankruptcy, and notice thereof, have taken place, and proceedings in bankruptcy have been commenced against the mortgagor, who has been duly adjudged a bankrupt, as in the case at bar, must take notice of such proceedings, and have due respect to the same, as well as to the provisions of the bankrupt act under which they have 'been commenced, or otherwise confusion would be liable to arise between conflicting rights and interests, and thereby some of such rights might be placed in jeopardy. All the other creditors, who have recourse only upon the remaining estate, have equities in the mortgaged estate: and wherefore such equities should be carefully watched and protected, and, if possible, made available for the universal good of such other creditors.

In weighing the very able arguments of counsel on both sides of the question, and in applying the several authorities introduced by counsel, and in order to a just and proper appreciation of them, it becomes necessary to analyze the several bankrupt acts upon which they were severally made: or, at least, so far as the motion under consideration renders it necessary. In doing this, we will give a synoptical statement of the acts of 1841 and 1867, or rather of such sections of them, respectively, as bear upon the questions involved.

By the act of 1841 (sections 3, 5, 6, and 11) we find the following powers granted: First. The jurisdiction of the court extended to all cases, and controversies in bankruptcy between bankrupt and creditors, to all cases and controversies between creditors and assignee, to all cases and controversies between assignee and bankrupts, and to all acts, matters, and things to be done under the bankruptcy until the final distribution and settlement of the estate, and the close of all the proceedings in bankruptcy. See section 6. Second. The assignee was invested with all the rights and powers of the bankrupt. Section 3. Third. All suits in law or equity pending, in which the bankrupt was a party, could be prosecuted and defended by the assignee to a final conclusion. Section 3. Fourth. All creditors proving their debts could not maintain any suit at law or in equity against the bankrupt. Section 5. Fifth. "The assignee has full power and authority, under the directions of the court, to redeem mortgaged or other pledged property, real and personal, and to discharge such liens therefrom." Section 11.

By the act of 1867, we have the following provisions: "Jurisdiction of Court. The jurisdiction of the bankrupt court shall extend to all cases and controversies arising between the bankrupt and creditors who shall claim any demand under the bankruptcy; to all collections of the assets of the bankrupt; to the ascertainment and liquidation of liens and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all parties: to the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties, and the due distribution of the assets among all the creditors." Section 1. "Powers of Assignee. The assignment shall relate back to the commencement of proceedings in bankruptcy, and by operation in law the title of all real and personal estate shall rest in the assignee, though attached by mesne process within four months; all rights of redeeming the estate, all rights in equity, choses in action, patents and patent rights, and copyrights, all debts due him or to others for his use, and all liens and securities therefor; he may sue for and recover the estate, debts, and effects, and may prosecute and defend all suits at law or in equity, pending at the time of the adjudication of bankruptcy." Section 14. "No person shall be entitled to maintain an action against an assignee, for anything done by him, without twenty days' notice," etc. "The assignee shall have authority, under direction of the court, to redeem or discharge any mortgage, or conditional contract, or pledge, or deposit, or lien upon any property, real or personal, whenever payable, and to tender due performance of the consideration thereof, or to sell the same, subject to such mortgage lien, or other incumbrances. The assignee shall demand and receive from all persons holding the same, all the estate assigned or intended to be assigned under this act," etc. Section 15. "If an action is pending in behalf of the debtor, the assignee shall be admitted to prosecute the action in his own name." Section 16. "First. When a creditor has a mortgage or pledge of real or personal property, or a lien thereon for securing the payment of a debt owing to him from the bankrupt, he shall be first admitted as a creditor only on the balance after deducting the value of the property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court may direct: or, Second. The creditor may release or convey his claim to the assignee, upon such property, and be admitted to prove his whole debt: or, Third. If the value of the property exceeds the sum for which it is so held as security, the assignee may release to the creditor the bankrupt's right of redemption therein on receiving such excess: or, Fourth. The assignee may sell the property, subject to the claim of the creditor thereon. Whichever course of policy may be adopted, the assignee or creditor respectively, shall execute all deeds and writings necessary to consummate the transaction. If the property is not so sold or released and delivered up, the creditor shall not be allowed to prove any part of his debt." (Section 20.) "Creditors proving their claims are not allowed to maintain any suit at law or in equity against the bankrupt." Section 21. "No creditor, whose debt is provable under the act, shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt, until the debtor's discharge shall have been determined. If, however, the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment to ascertain the amount due, which amount may be proved in bankruptcy, but execution shall be stayed."

By a careful examination of the above abstract of the said provisions of these two bankrupt acts, it will be observed, that the act of 1867 contains, upon the questions involved in the motion under consideration, many provisions not in the act of 1841. In addition to the jurisdiction conferred upon the federal courts by the act of 1841, we find the act of 1867 to

contain authority for the ascertainment and liquidation of liens, and other specific claims for the adjustment of the various priorities and conflicting interests of all parties concerned, and for the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties, and due distribution of the assets among all the creditors, under the acts. In addition to the act of 1841, the assignee can sell mortgaged property subject to liens, or, by agreement with the holder of the security, fix the value of the incumbered property over that of the debt for which it is held as security, or release to the creditor the bankrupt's right of redemption, on receiving from him the excess of the value of the mortgaged property over that of the debt, and may, with the bankrupt, execute deeds to such mortgaged property when so disposed of. The assignee, as a further power, may also receive or demand, from all persons holding the same, all the estate assigned or intended to be assigned under the act. And, as a further power, it prohibits all creditors, whose debts are provable under the act, from prosecuting to final judgment any suit at law, or in equity therefor, against the bankrupt, until the debtor's discharge shall have been determined. And, as a further power, it provides, that, if such mortgaged property is not sold, or released, or delivered up to the assignee, the creditor holding the same shall not be allowed to prove any part of his debt. In addition to these further powers under the act of 1867 in the prescribed form of a secured creditor, set forth in form No. 21, which must be considered and taken to be, so far as it has application, a part of the act itself, this prescribes, after setting forth and describing the secured creditor's claim, that the bankrupt is justly and truly indebted to him in the sum of ——— dollars, for which said sum, or any part thereof, he has not, nor has any person by his consent, order, or to his knowledge or belief, for his use, received any security or satisfaction whatsoever, save and except the mortgage hereinafter mentioned; that the claim was not procured for the purpose of influencing the proceedings under the act of congress entitled, "An act to establish an uniform system of bankruptcy throughout the United States," approved March 2, 1867. That no bargain or agreement, expressed or implied, has been made or entered into, by or on behalf of such creditor, to sell, transfer, or dispose of said claim, or any part thereof, against said bankrupt, or to take or receive, directly or indirectly, any money, property, or consideration whatsoever, whereby the vote of such creditor for assignee, or any other action on the part of such creditor, or any other person, in the proceedings, under said acts, has been, is, or shall be, in any way affected, influenced, or controlled; and then further prescribes that such creditor shall add to such proof of his claim a particular description of the debt, and also of the property held by him as security, and the estimated value of such security or property.

These additional powers, contained in the act of 1867, are very great, and seem to justify the conclusions that all the property and equities of the bankrupt, whether mortgaged, pledged, or otherwise encumbered, and in whosesoever hands the same may be, shall be delivered up to the assignee, subject to all bona fide liens, to be by him disposed of for the benefit of the creditors; and, further, that the avails thereof be distributed by him to the creditors under the act; and that, in the sale of mortgaged or other pledged property, he shall have due respect to such liens thereon. It is but just, as well as a compliance with the spirit, if not with the letter, of the act, that all the property, rights, and equities of the bankrupt should not only pass to, but be actually taken and disposed of or converted into money by, the assignee, and then distributed by him under the act, according to the rights of the several creditors, having respect to priorities. It is but just, as well as a compliance with the spirit, if not with the letter, of the act, that the secured creditors, as well as the others, should be required, under the solemnities of a proper oath or oaths, to prove before the register their several claims, and the value of the property held by them for the security of their claims; or otherwise a wide door would be left open for the perpetration of fraud against all other creditors. By the act of 1841 no creditor or other person coming in and proving his debt or other claims shall be allowed to maintain any suit at law or in equity therefor; but by the act of 1867, in addition to the above provisions, it is further provided: "No creditor whose debt is provable under the act, shall be allowed to prosecute to final judgment any suit at law or in equity therefor, against the bankrupt, until the debtor's discharge shall have been determined" (see section 21); and, by the 20th section: "A creditor having a mortgage or pledge of real or personal property, or a lien thereon for securing the payment of a debt owing to them from the bankrupt, he shall be admitted as a creditor only on the balance, after deducting the value of the property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court may direct," etc. By the terms of the act of 1867, it is manifest that a secured creditor, by proving his claim against the bankrupt before the register, who in and by a proper oath sets forth and particularly describes his mortgage, lien, or other security, and the property so pledged and its value, and thereby claims to be entitled to share in the balance of the assets for only the balance of his claim, after realizing what he may out of his said securities, must and will be fully protected by the bankrupt court in his rights in the premises according to such proof. Such proof, so far from destroying or making void his mortgage, lien, or security, establishes the same, and also secures to himself, with it, his right under the act to share in all other of the assets of the bankrupt with other creditors, for whatsoever balance of his said claim as remains unpaid after giving full and exact credit for the amount he may have realized upon the sale of the property so pledged to him in good faith.

For just and equitable purposes, and to guard against fraud, the act rightfully takes the pledged property or lien out of the power of the secured creditor's control or management, or in reducing it to money in his chosen way, without responsibility, and places it in the hands of the assignee of the bankrupt, who, being an agent of the court, and at the same time the representative of the rights of all parties in interest, is supposed to be above all temptation to fraud; and directs him in such capacity, and under the pledge of his official bond as assignee, and under the directions of the court, to convert such mortgaged or pledged property into money, and to distribute the same under the provisions of the act, with due regard to all priorities shown to exist in the proceedings of bankruptcy by the proof of the claims against the bankrupt. So far from taking any right or rights from the secured creditors under the mortgaged lien or pledge by which he holds the same, it simply regulates the modes and means of foreclosing the mortgage or other lien, and of reducing such security to money, in order that the court may be able to enforce exact justice, and so that the rights of all the creditors are secured to them under the proof of claims and under the law. If, by some of the provisions of the act, there is a seeming right of the secured creditor to stay out of the bankrupt court with his claim, and pledged property of the bankrupt to secure the same, and also a seeming right to be left alone with both claim and security, with the right, by himself, or under the powers and jurisdiction of some other court, to foreclose and sell the same, and

liquidate his own debt. and to return the balance, if any, to the bankrupt, or to the assignee of the bankrupt, yet it must be conceded that there are other provisions. which we have above set forth, which, properly, or even strictly, construed, prohibit such creditor from so doing, and compel him to come into the bankrupt court for his rights under the act. It is a general rule that the several provisions of the act must be so construed as to gain effect and harmony to the same in its true spirit and manifest intention of the same; its primary and chief design being, as we have before said, to distribute the bankrupt's estate among his creditors according to justice and equity, having due regard to all priorities. mortgages, and liens under the act; and for that purpose, and to that end, the court being granted equitable jurisdiction. and clothed with all powers, at law or in equity, over all matters pertaining to the bankrupt's estate, with the especial view to carry out such designs, the conclusion that all the property, choses in action, and effects, and interest. and equities of the bankrupt must be brought into the bankrupt court for settlement, disposition, and distribution under the act, is inevitable. Sections 1, 14, 15, 16, 20, 21.

The authorities cited by counsel in behalf of the said secured creditor were rendered under the act of 1841. and while they are sound and controlling under that act. and the state of facts they set forth. they are not in point nor of weight under the provisions of the act of 1867, on the points arising in this case. In re Davis [Case No. 3.618], decided by his honor, Judge Treat, of Missouri. is not strictly in point. yet it approaches so near in principle. that it sheds much light upon the questions involved in the motion under consideration. While we are not now called upon to decide the question which he decided in that case, still we must say that much of his argument commends itself to our judgment; but we are not quite prepared to say with him, as he said in that case. that a sale under such circumstances, made by a trustee or mortgagee, is absolutely void. Nor are we prepared to say that he is not right. but we have no hesitation in saying that such a sale, in our judgment, would be voidable.

From the premises and conclusions above expressed, it is manifest that this court has jurisdiction over the property mentioned in the bankrupt's petition, and has power to restrain the said secured creditor and other persons from prosecuting in the said district court the said proceedings to foreclose said mortgage lien upon the said property; and we are also of the opinion that, under the circumstances, facts, provisions. and powers of the bankrupt act, this court, having jurisdiction. is bound to exercise the same. and that, therefore. an order should be made in this case in conformity to the prayer of the said petitioner.

STRICKLAND, J. I fully concur in the above opinion.